I'd like to reserve two minutes for rebuttal and I will try and keep track of my time this morning. Numerous sentencing errors in this case warrant remand, but today, unless the court directs me otherwise, I'd like to primarily focus on two issues related to the imposition of supervised release in this case. First, I'd like to discuss the procedurally erroneous imposition of the term of supervision itself. And then second, I'd like to focus on the 13 standard, but nevertheless, discretionary conditions that were imposed in this case, which as applied to Mr. Murillo-Ramos are both unconstitutionally vague and unrelated to the goals of supervision. Turning first to the term itself, it's well settled precedent in this court, in the Supreme Court, that a sentencing judge must always determine and properly calculate the guidelines to serve as a benchmark at a particular sentencing. And in this case, the guideline provision that governed imposing a term of supervised release on Mr. Murillo-Ramos was 5D1.1c, which provides that a district court ordinarily should not impose a term of supervision on a defendant like Mr. Murillo-Ramos, who's likely to be deported following his term of imprisonment. The guidelines, of course, and the commentary explain why this is, because generally, it's unnecessary to supervise an individual who's going to be residing outside of the United States. And if that individual should later unlawfully return, well, deterrence and public protection are generally adequately served by the new prosecution that will ensue. Now, of course, as with any guidelines calculation, the district court, of course, retains discretion to vary from the recommendation, but in order to vary from 5D1.1c, the district court needed to find that imposing a term of supervision here would serve an added measure of deterrence or an added measure of protection. And the district court needed to do so by providing a specific and particularized explanation based on Mr. Murillo-Ramos' circumstances as to why the court was sent finding. The procedural error in this case is that the record is entirely silent as to whether the district court was aware of 5D1.1c or the provision's applicability to this case. The record is entirely silent. The district court did not make a finding that such a term of supervision would serve as an added measure of deterrence or protection, and accordingly, there was no specific and particularized explanation supporting such a finding as the finding wasn't made. This procedural error we contend constitutes plain error, and so we're asking this court to exercise its discretion and remand on this issue to permit the district court to determine the proper guideline in the first instance and use the guideline as the benchmark when resentencing Mr. Murillo-Ramos and considering the issue of supervision. Turning then to the specific conditions themselves, the district court here rather reflexively imposed 13 standard conditions of supervision, and of course, although we generally refer to them as standard, they are nevertheless discretionary. Here, or in any case, discretionary conditions must be, at a minimum, constitutional, of course, and they must also be related to the goals of supervision, that being deterrence, public protection, rehabilitation. Here, the district court didn't clarify whether these conditions would apply to Mr. Murillo-Ramos while he's in Mexico, or how they could apply to Mr. Murillo-Ramos while he's in Mexico. This court, of course, is clear that an individual has a due process right to notice of what conduct may result in him being returned to prison, and the face of these conditions as they are, given Mr. Murillo-Ramos's imminent deportation, leads him to merely guess as to what conduct may or may not result in him being returned to prison. We further submit that it violates fundamental notions of fairness that Mr. Murillo-Ramos may incur violations for conduct wholly outside of his control, because he can't comply with certain of these conditions. Relatedly, I'll turn to my last point on this, which is that even if the court could find these conditions meet the constitutional threshold for clarity here, they're nevertheless not reasonably related to the goals of supervision for Mr. Murillo-Ramos. Generally, United States parole and probation provides that when an individual is removed from the country, even while his supervision is running, his case is likely to be placed on an inactive status, and he won't be actively supervised by a probation officer, begging the question, then, what purpose these conditions could possibly serve for Mr. Murillo-Ramos. Even if he does... So can I ask you a question? You know, recently, in the last year or so, there have been many instances where when someone completes their term of imprisonment, they're not deported to Mexico, and they are released into the United States. So wouldn't these conditions have some applicability in those instances? So I think the short answer is, of course, yes, if Mr. Murillo-Ramos didn't leave the country, then we wouldn't really have a problem with these conditions. But if I may explain that, why that shouldn't impact the court's decision in this case is for a few reasons. First, it's undisputed that Mr. Murillo-Ramos' personal circumstances are that he likely will be deported, and the government hasn't disputed that point, that he is facing imminent deportation. And because of that, because that was his individual situation at sentencing, that's what renders these conditions unclear to Mr. Murillo-Ramos as of now. But the district court judge doesn't know if an individual is going to be removed from the United States or not. And if the person is not removed, then there would be no conditions that would govern that person's conduct while they're here in the United States. The information before the district court judge at the time of sentencing was that Mr. Murillo-Ramos does, in fact, have an ICE detainer launched against him at the time of sentencing. And to my knowledge, at this point, that has not changed. But yeah, even if, as Your Honor is suggesting, well, you know, we can't predict the future with 100% certainty, absolutely, no dispute there. But what the district court could have and should have done here is a simple fix to render the requisite clarity, which is the district court can easily, if the district court intended only that these conditions apply in the United States, the district court could have said as much in its statute. We must, this court has been clear, can direct the court to, at a minimum, its decision in the United States v. Aquino, that this court will take the conditions at their plain language. The plain language of these conditions as they are now is that they are somehow to apply whether in the U.S. or in Mexico. And that engenders the problem here. Counsel? Ms. Gavorkian. Go ahead, Judge Rollins. Are you suggesting, then, that we should remand simply for the district court to include the language that the conditions apply if the defendant is found present in the United States? Is that what you're asking us to do? All we're asking this court to do is to remand in order to permit the district court to clarify whether the conditions will apply in the U.S. and Mexico. And if there are some that the court intended to apply in Mexico, we really don't know at this point, for the district court to appropriately tailor those conditions if necessary. Well, but that's not what you said. You said all the district court had to do was put in there that the conditions are to apply when Mr. Murillo is in the country. But now you're saying it should go back for a new hearing. I apologize, Your Honor. That specific statement was just in regard to if that was, in fact, the district court's intent that these were to only apply in the United States. We don't know that from the record. In fact, when imposing the standard conditions of supervised release, the district court said Mr. Murillo-Ramos is to abide by these conditions during the term of supervision, which of course continues to run while he's outside of the country. But of course, we have no jurisdiction in Mexico, so how could the court have intended for these supervised release conditions to apply in Mexico? The court is well aware of its jurisdiction. And I would agree with Your Honor that I think that engenders even greater concern here that Mr. Murillo-Ramos is an individual who's being given a piece of paper saying you need to abide by these conditions. And yet it's wholly, as Your Honor has noted, it's wholly unclear whether we even have the jurisdiction to require him to abide by these. So due process, of course, I apologize, Your Honor. Ms. Gaffer, Ms. Gaffer again, so I have a question. Even if – even if – wait a minute. If he's deported but comes back, if he is deported but returns unlawfully, don't the conditions add extra protection? Not specifically the standard conditions, Your Honor, because Mr. Murillo – whether the standard conditions have been imposed or not, the mandatory conditions still provide that Mr. Murillo-Ramos may not violate a federal law. So it would potentially be a violation returning unlawfully. And furthermore, Mr. Murillo-Ramos does not challenge the imposition of the special condition in this case, which requires deportation compliance. So at a minimum, again, I think this just underscores the fact that the standard conditions aren't reasonably related to the goals of supervision, as if the primary goal here is, as Your Honor has suggested, deterrence. Well, these are adequately served by conditions that have already been imposed. I would close with – I see I'm well over my time. I would just close with, you know, an individual here has a due process right to, again, notice of what particular conduct is going to lead to a violation. And here, because Mr. Murillo-Ramos is quite simply left to guess at the meaning of these conditions and their applicability, we're just asking for this court to remand, to permit the district court to consider these conditions in the first instance, and clarify the court's intent. Thank you, counsel. Thank you. For your planning. We'll give you two minutes for rebuttal. Good morning. May it please the court. Elizabeth White for the United States. As Ms. Kevorkian said a couple of times, the record here is silent. And the reason the record here is silent is because none of this was raised in the district court. I do believe that this could have been handled in about 30 seconds simply with the sentence that, you know, Your Honor, just to clarify, these standard conditions don't apply if he's deported so long as he stays in Mexico, correct? Correct. Could you add a sentence to the judgment that says that? Sure. The government wouldn't have opposed that. I can't imagine that Judge Mahan wouldn't have granted that simple request. And the fact is, is that there are at least three very good reasons why this court reviews unpreserved errors only for plain error. The one, I mean, first of all, is just simple respect to the district judge and to the various roles that these courts play. This court is supposed to be a court of review, not a court of first view. And the district judge, the parties should give the district judge the opportunity in the first instance to fix whatever it is they think needs to be fixed. But perhaps more important here is just simply the cost and the resources that it takes to fix an unpreserved error. Like I say, this could have been dealt with very quickly at sentencing. Instead, now, I'm not entirely clear what my friend on the other side is asking. It sounds like in the briefing that they were asking for a new sentencing hearing, which means that the marshals have to go contact the BOP, transport Mr. Mario Ramos back from, I think he's at Lompoc, get everybody together, get the court reporter together, schedule another hearing. Even if he agrees to do this by video, there's costs that that entails. And so for that reason, for both of those reasons, this court doesn't correct unpreserved errors just for the sake of correcting them. Obviously, if there's an error that is obvious that the defendant is going to suffer serious prejudice, is going to suffer prejudice from that error, this court is not going to hold against the defendant the fact that their attorney didn't make the objection in the district court, and we will correct that error. But in this case, where there is zero possibility that this defendant is going to suffer any prejudice at all from this error, it is simply the case, and has been. I've been in the District of Nevada for 15 years, and so for at least 15 years, and quite a bit longer, I'm sure. It has simply gone without saying that if a defendant is deported, the standard conditions of supervised release aren't applied while they remain outside the country. There has never been, in the District of Nevada, a revocation petition claiming that the defendant in Mexico didn't work 30 hours a week, or didn't have probation approved where he was going to live. I mean, this is not something that has ever happened. It has simply gone without saying. And my friend on the other side is making a point, and I'm not going to take issue with her point, that it shouldn't go without saying. It should actually be explicit. The judges should make clear in the record to just eliminate any ambiguity or any confusion, that that should be clear. And the way to make that happen is to ask the district judges in Nevada to include that. And I will just note, I mean, this brief, the opening brief was filed in July of 2021, and since then, eight months have passed, they're still not making this request in the district court. And I don't know how many of those defendants who have been sentenced since then are still within the time to appeal those sentences, but we could see a number of these, all of which could have just been absolutely resolved if the defense had just simply made the request in the district court and given the district judge an opportunity to do his or her job. This is on plain error review, and my friend on the other side acknowledges that this is plain error review. And one of the key points of plain error review is if there is no on-point decision and the decisions that are available point in different directions, then the error cannot be plain. And we cited two cases in our brief, one in which a panel of this court said that this specific issue does not constitute plain error, and one in which a panel of this court said that imposing the standard conditions on a defendant who's going to be deported is not abuse of discretion. Now, there have been other cases where, and there are two cases where this court remanded for the district court to clarify. It wasn't clear for me, those are also unpublished decisions, and it's not clear to me whether those were also on plain error review or whether there was some kind of preservation. In one of the cases that the defense cites in their brief, there was actually the PSR had recommended language saying that they only applied in the United States, and the district court imposed it without making that clear. And so there was a question whether the oral pronouncement matched the written judgment. But regardless, I mean, I think that my point here is I'm not saying that this is an unreasonable request to make. It is true that those standard conditions are not an abuse of discretion. The defendant might not be deported, and he probably will be. I mean, we expect that he will be, but things change, and maybe he won't be. And so obviously, if he isn't, those conditions are going to apply. If he comes back, those conditions apply. And it's true that the special condition says that if he comes back, he needs to report to probation within 72 hours. And frankly, they don't do that because when they come back, they're coming back without authorization, and they're coming back illegally. They are committing another crime. And that's exactly what happened here, of course, because this is Mr. Murillo-Ramos's second federal 1326 conviction. And when he came back after Judge Dorsey sentenced him, she gave him a below-guideline sentence. And a three-year term of supervised release. He was deported. He came back. So Judge Mahan heard this new prosecution, but there was also a supervised release revocation in front of Judge Dorsey. And again, I mean, the special condition that he was charged with violating was the one about not coming back to the United States. If he was not charged with not working 30 hours a week or not checking in with a probation officer routinely as the standard conditions are, I mean, that is just something that does not happen. Again, yes, maybe it should be explicit. It would be easy enough for the defense. And in particular, when you've got an institutional player like the Federal Public Defender's Office who can make this happen, you know, they appear in front of all of the judges on a whole lot of cases. And if this is something that they want to happen, they can simply make that request. And that's where that should start. And in the meantime, this error, to the extent that there's error, I mean, I'm not saying that it's an unreasonable request. But in terms of the requirements for what constitutes plain error, we've got decisions from this court saying this is not plain error. And there's no published decision saying that it is. So it doesn't meet the second prong of plain error, and it doesn't meet the third prong of plain error, because there is literally none chance that this defendant is going to be prejudiced by any ambiguity or confusion in the judgment. So if the court has any questions, I'm happy to answer them.  I have no questions. No. Judge Rawlinson? No, thank you. Hearing none, so Ms. Kevorkian, giving you two minutes for rebuttal. Thank you, Your Honor. I'll just go ahead and touch on just kind of broadly a couple of things that the government represented. Broadly, I just want to address first the point that I respect that perhaps the government or probation officers may be choosing to enforce conditions in specific ways. But this court in Aquino and more recently in Evans is clear that when a supervision condition is invalid or unlawful as it's written, this court cannot defer to the discretion of the probation officer in order to ensure that it will be enforced in a lawful manner. So to the extent that these conditions are on their face as applied to Mr. Maria Ramos, unconstitutionally vague and unrelated to the goals of supervision, the government's representations as to how they may or may not be applied simply should not factor into this court's analysis. I would also like to point out for this court that it need not wade into the conflicting unpublished decisions on this issue, because Mr. Maria Ramos relies on longstanding sentencing law from published decisions of this court and the Supreme Court, which this court can look to, for example, United States versus Lacoste, where it reversed conditions under plain error review. And in fact, the Supreme Court has been clear that plain error exists for this precise reason, that oftentimes errors go unnoticed by both the parties and the district court judge. And I absolutely submit that's what happened here. These errors went unnoticed by the parties as well. But as the Supreme Court has also said, unlike a remand for a retrial, a remand for resentencing does not demand the same difficulties of the district court. So, of course, although I would emphasize one last thing that, of course, Mr. Maria Ramos is as set forth in the cases cited in the briefing, his substantial rights are affected by being subjected to unlawful conditions here. So unless the court has any additional questions for me, we would, of course, urge remand for a full resentencing as set forth in the briefing. But alternatively, if the court affirms on the imprisonment term, we'd ask for a limited remand for the supervision related issues. Thank you, Your Honor. Thank you, Ms. Kovorkian. I want to thank Ms. Kovorkian and Ms. White for their arguments to us. It really is a big aid to the court. And you probably are entitled to a special pandemic bonus for arguing remotely in these times. Unfortunately, I have no authority to give you a bonus like that. But I can give you thanks on behalf of the panel. So that case shall be submitted. And the next case on the calendar today was Chadwick v. Hill. And that case, Chadwick, has been submitted on the briefs. And for the reporter, it's number 21-155-67. My eyes said it's working right. So now we would now take a recess. The court will take a recess for 10 minutes before returning for argument in our last two cases.
judges: GOULD, RAWLINSON, Zipps